UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JAMES MACKLEY,

               Plaintiff,               Case No. 2:14-cv-46

v.                                                  Honorable R. Allan Edgar

ROBERT NAPEL et al.,

               Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Marquette Branch Prison. In his *pro se* complaint, he sues Warden Robert Napel, Deputy Warden Jim Alexander, Lieutenant Ed Sanderson and Corrections Officer David Fhlug.

On November 22, 2013, Defendant Fhlug issued a Class II misconduct against Plaintiff for destruction or misuse of property for allegedly writing in three volumes of the Federal Reporter that Plaintiff borrowed from the prison law library. (*See* Misconduct Report, Ex. A, docket #1-3, Page ID#9.) The misconduct report requested restitution of $224.00 for each book for a total of $672.00. (*Id.*) Petitioner denied writing in the books. Following an administrative hearing on December 5, 2013, Defendant Sanderson found Plaintiff guilty of the offense. Sanderson provided the following reasons for his findings:

> After comparing handwriting found on Mackley's visitor application and law book request there does [sic] appear to be similarities in certain letters and numbers. The paper work documents that the law books were given to Mackley in good condition and returned to the law library with pen writing in the books. Due to the evidence presented I find the probability that Mackley is responsible for the alterations to the books and for that reason is guilty of the charge Destruction or Misuse of Property.

(Misconduct Hrg. Report, Ex. B, docket #1-4, Page ID#10.) As a result of the conviction, Plaintiff received 30 days loss of privileges and was assessed restitution of $672.00. Plaintiff claims that Sanderson refused to review several written documents offered by Plaintiff as evidence that the handwriting in the law books did not match his own. Plaintiff further alleges that Sanderson refused to allow Plaintiff to provide a visual demonstration of his handwriting at the hearing. Plaintiff raised those issues on appeal, but his appeal was denied by Defendant Alexander. (*See* Misconduct Appeal, Exhibit C, docket #1-5, Page ID#11.)

Plaintiff contends that he was denied a fair misconduct hearing and appeal. He alleges that if Defendant Sanderson or Alexander had reviewed the evidence that he wishes to submit, they would have clearly seen that the handwriting did not match. Plaintiff seeks injunctive relief and monetary damages of $672.00. He also seeks all fees and costs associated with this action.

## Discussion

### I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

As an initial matter, Plaintiff fails to make specific factual allegations against Defendant Napel. Rather, Plaintiff appears to sue him only by virtue of his position as Warden of the facility. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to

allege that Defendant Napel engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against him.

Plaintiff's claim that he was denied a fair misconduct hearing and appeal implicates the Due Process Clause. A prisoner's ability to challenge a prison misconduct proceeding on due process grounds depends on whether the resulting conviction or punishment implicated a protected liberty or property interest. In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Supreme Court recognized that prisoners have a liberty interest in good-time credits, which affect a prisoner's release date, and prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of these credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits. *Wolff*, 418 U.S. at 557. Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Because Plaintiff was convicted of a Class II misconduct, he was not subject to forfeiture of good-time credits.

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to a prison misconduct conviction that results in a "restraint [of liberty] which . . . imposes atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *See Sandin v. Connor*, 515 U.S. 472, 486-87 (1995). Plaintiff has not identified any significant deprivation of liberty arising from his misconduct conviction. The

documents attached to the complaint indicate that, in addition to being ordered to pay restitution, Plaintiff lost privileges for 30 days. The loss of privileges for 30 days is not an atypical and significant hardship. *See Sandin*, 515 U.S. at 486 (30 days in disciplinary segregation with limited privileges is not atypical and significant); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (fourteen-day loss of privileges did not impose an atypical, significant deprivation); *Dixon v. Morrison*, No. 1:13–cv–1078, 2013 WL 6512981, at *7 (W.D. Mich. Dec.12, 2013) (fifteen-day loss of privileges did not impose an atypical, significant deprivation implicating due process); *see also Wolff*, 418 U.S. at 571 n. 19 ("We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges."). Thus, the misconduct conviction did not implicate a protected liberty interest.

        To the extent that Plaintiff's conviction and punishment implicated his property interests because he was ordered to pay restitution, he fails to state a due process claim. Prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. If the prisoner received the procedural protections set forth in *Wolff*, and if there was "some evidence" to support the decision of the hearings officer, then the prisoner received all the process to which he was due. *Walpole v. Hill*, 472 U.S. 445, 457 (1985).

Plaintiff contends that the misconduct proceedings were unfair because the hearing officer failed to review the written documents offered by Plaintiff as evidence and refused his request to provide a visual demonstration of his writing. However, the right to call witnesses or present evidence is not absolute. *Wolff*, 418 U.S. at 566. The Supreme Court explained:

> [W]e must balance the inmate's interest[s] against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reasons for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases.

*Id.* The hearing officer reviewed two separate documents written by Plaintiff before concluding that there were sufficient similarities to the writing in the reporters to support a finding of guilt. The written documents Plaintiff offered as evidence or a writing demonstration by Plaintiff would have been cumulative. Moreover, any writings created by Plaintiff after he was notified of the misconduct charge would have been subject to manipulation. Due process also does not require prison officials to find and retain an expert in handwriting analysis. *See Spence v. Farrier*, 807 F.2d 753, 755–56 (8th Cir. 1986); *Garrett v. Smith*, 180 F. App'x 379, 381 (3d Cir. 2006).

In addition to the handwriting comparison, the hearing officer's decision was supported by library records, which showed that the reporters were in good condition when they were loaned to Plaintiff, but came back with writing in them. Because Plaintiff received the procedural protections set forth in *Wolff* and there was some evidence to support the hearing officer's decision, Plaintiff received all of the process that he was due. While the Due Process Clause guarantees minimum *process* before depriving an individual of life, liberty, or property; it does not guarantee

that the procedure will produce the correct decision. *See Martinez v. California*, 444 U.S. 277, 284, n.9 (1980) ("It must be remembered that even if a state decision . . . is erroneous, it does not necessarily follow that the decision violated that individual's right to due process."). Accordingly, Plaintiff fails to state a due process claim against Defendants Fhlug, Sanderson and Alexander.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: 9/19/2014                          */s/ R. Allan Edgar*
                                          R. ALLAN EDGAR
                                          UNITED STATES DISTRICT JUDGE